# UNITED STATES OF AMERICA

DEPARTMENT OF HEALTH AND HUMAN SERVICES
OFFICE OF INSPECTOR GENERAL

## SUBPOENA DUCES TECUM

Control No.: 14966

*To:*
*Florida Oncology Network, P.A.*
*2501 North Orange Avenue*
*Suite 181*
*Orlando, FL  32804*

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE Special Agent Julie Gray, an official of the Office of Inspector General, Jacksonville Office, at 8659 Baypine Road, # 201, in the city of Jacksonville, and State of Florida,* **on the 15th day of May 2013, at 10 o'clock am, of that day**, *in connection with an investigation into possible false claims to Federal health care programs; and you are herby required to bring with you and produce at said time and place the following:*

  See Attachments

*which are necessary in the performance of the responsibility of the Inspector General under Public Law 95-452 [5 U.S.C. App. 3 § 6(a)(4)], as amended by Public Law 100-504, to conduct and supervise audits and investigations and to promote economy, efficiency, and effectiveness in the administration of, and to prevent and detect fraud and abuse in, the programs and operations of the Department of Health and Human Services.*



*IN TESTIMONY WHEREOF*

*Christopher B. Dennis, the undersigned official of the Office of Inspector General of said DEPARTMENT OF HEALTH AND HUMAN SERVICES has hereunto set his hand this 16th day of April, 2013.*

_____
*Special Agent in Charge*

UNITED STATES OF AMERICA
DEPARTMENT OF HEALTH AND
HUMAN SERVICES
OFFICE OF INSPECTOR GENERAL

**RETURN OF SERVICE**

I, being a person over 18 years of age, hereby certify that a copy of this subpoena was duly served on the person named herein by means of –

1. personal delivery to an individual, to wit:

Pamela Barba
(Name)

Medical Records Cood
(Title)

2501 N. Orange Ave. Ste 181 Orlando, FL 32804
(Address)

2. personal delivery to an address, to wit:

_____
(Description of premises)

_____
(Address)

_____
(Address)

3. registered or certified mailing to:

_____
(Name)

_____
(Address)

_____
(Address)

at  11:30   (X) a.m.
         ( ) p.m. on  April 18, 2013

[signature]
(Signature)

Special Agent
(Title)

Upon contumacy or refusal to obey, this subpoena shall be enforceable by order of the appropriate United States District Court.



DEPARTMENT OF HEALTH AND HUMAN SERVICES

# OFFICE OF INSPECTOR GENERAL



OFFICE OF INVESTIGATIONS
MIAMI REGIONAL OFFICE
7900 OAK LANE, SUITE 200
MIAMI LAKES, FL 33016

April 16, 2013

Florida Oncology Network, P.A.
2501 North Orange Avenue
Suite 181
Orlando, FL 32804

Dear Sir or Madam:

Accompanying this letter is a subpoena addressed to you and returnable to the U.S. Department of Health and Human Services, Office of Inspector General (OIG), Office of Investigations, before my designee, Special Agent (SA) Julie Gray. The subpoena has been issued pursuant to the authority provided to the Inspector General under Public Law 95-452 (see U.S.C. App. 3 § 6(a)(4)), as amended by Public Law 100-504.

Under the health information privacy regulation that implements the Health Insurance Portability and Accountability Act of 1996, also known as HIPAA, providing the information requested by the attached subpoena is a permitted disclosure since it is "required by law" (see 45 C.F.R. §§ 164.512(a), 164.103), and will be used for "health oversight" activities by OIG, which meets the definition of a "health oversight agency" (see 45 C.F.R. §§ 164.512(d), 164.501).

Fully legible and complete copies of the records called for by the subpoena will be accepted in response to the subpoena, provided that the original records will be made available to employees of my office, upon request, during normal business hours. Otherwise, original documents (including copies as maintained in your files) should be produced.

Failure to appear at the time and place specified in the subpoena may be taken as a failure to comply with the subpoena. However, as a convenience, and in lieu of your personal appearance, you may assemble the documents requested and mail them by certified mail on or before May 15, 2013, to:

Page 2 – Florida Oncology Network, P.A.

**Special Agent Julie Gray**
**U.S. Department of Health and Human Services**
**Office of the Inspector General**
**Office of Investigations**
**Jacksonville Field Office**
**8659 Baypine Road #201**
**Jacksonville, FL 32256**

If you have any questions, please feel free to contact SA Gray at (904) 232-1409 or (904) 562-0993.

Sincerely,

Christopher B. Dennis
Special Agent in Charge

Enclosure

# DECLARATION OF COMPLIANCE WITH SUBPOENA

I, _____, as Custodian of Records for _____ ("Company"), hereby respond to the subpoena duces tecum issued to the Company by the Office of Inspector General of the U.S. Department of Health and Human Services on _____. I hereby declare that I, and/or others at my direction or under my supervision, have made a diligent search of the documents in the possession, custody, or control of the Company. I further declare that, to the best of my knowledge, I have produced to the Office of Inspector General all of the documents that are responsive to the subpoena and that those documents are complete, authentic, and in full compliance with the terms of the subpoena.

I hereby declare under penalty of perjury and the laws of the United States that the foregoing is true and correct.

_____        _____
Signature                                   Date Executed

_____
Name (Typed or Printed)

_____
Title

**WITNESS:**

_____        _____
Signature                                   Date

_____
Name (Typed or Printed)

_____
Title

## ATTACHMENT A -- DOCUMENTS TO BE PRODUCED

**Definitions:**

Unless otherwise provided for, the following terms shall have the meanings specified:

1. "Document(s)," "record(s)," and "electronically-stored information" ("ESI") are used in the broadest sense, and used interchangeably, as defined in the Federal Rules of Civil Procedure, and include the written, printed, typed, photographed, electronic, recorded, or graphic matter of every type or description including, but not limited to, files, folders, journals, appointment books or calendars, diaries, medical charts, drawings, graphs, explanations of benefits, Medicare/Medicaid/Tricare health-insurance claims forms, patient files, prescriptions, profiles, treatment plans, records, laboratory and x-ray results, index cards, notebooks, notepads, patient ledgers, receipts, vouchers, invoices, reports, correspondence, notes, memoranda, and material stored in any data storage system, to include electronic storage media, which incorporates electronic mail, text messages, voice mail messages, facsimiles, videotapes, audiotapes, photographs, magnetic tapes, computer disks (including floppy disks, hard drives, and hard disks), all programming instructions, record layouts, and other material necessary for the retrieval of all electronic or word processing material, and printouts of data or information stored or maintained by electronic means. Document(s), record(s), and ESI also include preliminary drafts or revisions, any attachments or enclosures, as well as copies or duplicates that are not identical to the original because of additions, deletions, alterations or notations. "Document(s)," "record(s)," and ESI are also defined to require the production of documents and ESI, such as distribution lists, that identify persons (including their addresses and telephone numbers) who receive the subject matter set forth in the individual requests.

2. "Including" means including but not limited to.

3. The words "or" and "and" are inclusive and interchangeable, referring to any one or more of the disjoined words or phrases, and "any" and "all" also include "each and every."

4. "Related to," "relating to," and "relate to" mean embodying, memorializing, containing, constituting, including, identifying, stating, reflecting, analyzing, pertaining, or being relevant to.

5. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice versa.

6. All present tenses of verbs or verb forms shall be considered to include within

their meaning the future and past tenses so used, and vice versa.

7. "Florida Oncology Network, P.A.", "Florida Oncology Network," "FON", "you," and "your" mean Florida Oncology Network, P.A., and any parents, subsidiaries, affiliates, segments, divisions, both presently existing and those that previously existed, and any present or former officers, directors, partners, employees, consultants, contractors, agents, or members of the board of directors or board of trustees of FON.

8. "Florida Hospital" means the Adventist Health System Sunbelt Healthcare Corp. ("Adventist") and all of the fictitious names Adventist does business under, including Florida Hospital and Florida Hospital Cancer Institute.

9. "Florida Hospital Cancer Institute" includes any hospitals within this system, including Winter Park Memorial Hospital-A Florida Hospital, Florida Hospital East Orlando, Florida Hospital Orlando, Florida Hospital Altamonte, Florida Hospital Kissimmee, Florida Hospital Celebration Health, Florida Hospital Ormond Memorial (Daytona Beach), Florida Hospital DeLand, Florida Hospital Fish Memorial (Orange City), Florida Hospital Flagler (Palm Coast), Florida Hospital Heartland (Sebring), and Florida Hospital Tavares.

10. "Agreements" and "contracts" shall be synonymous.

11. "Communication(s)" means the transmittal orally, in writing or electronically of information (in the form of facts, ideas, inquiries, or otherwise) from one person to another person.

12. "Correspondence" refers to the transmittal of information (in the form of facts, ideas, inquiries or otherwise) between two or more persons, in writing or electronically.

13. "Personal supervision" shall have the meaning set forth in 42 C.F.R. § 410.32(b)(3)(iii) and in the Medicare Benefit Policy Manual, Ch. 15, § 90.

14. "Direct supervision" shall have the meaning set forth in 42 C.F.R. § 410.32(b)(3)(ii).

15. "General supervision" shall have the meaning set forth in 42 C.F.R. § 410.32(b)(3)(i).

16. "Supervision" encompasses direct supervision, personal supervision, and general supervision as defined herein.

17. "Non-physician practitioner" refers to any type of personnel other than a physician who provides medical services, including nurse practitioners, advanced registered nurse practitioners, registered nurses, licensed practical nurses, physician assistants, laboratory technicians, laboratory assistants, and radiation therapists.

18. "Hospital privilege" relates to the right of a physician to use the facilities and equipment of a hospital or other provider.

19. "Radiation oncology services" include three-dimensional conformal radiation therapy (3D-CRT), intensity modulated radiation therapy (IMRT), IMRT planning services, image-guided radiation therapy (IGRT), high-dose rate brachytherapy, accelerated partial breast irradiation (APBI), stereotactic radiosurgery (SRS), stereotactic radiotherapy (SRT), stereotactic body radiation therapy (SBRT), high-dose rate breast and gynecologic brachytherapy, eye plaques, endobronchial brachytherapy, total body/skin irradiation, intra-operative radiotherapy with HAM applicator, breast intra-operative radiotherapy using Xoft electronic brachytherapy system, special radiation physics consultation, special treatment procedure, computed tomography guidance for placement of radiation therapy fields, simple simulations, complex simulations, three-dimensional simulations, complex treatment devices, dosimetry, and radiation treatment planning, evaluation and management, and diagnosis.

20. Radiation oncologist means a physician who provides radiation oncology services. All other physicians shall be referred to herein as "physician(s)."

21. "Personnel" shall be interpreted broadly to include anyone employed by FON in any capacity (including as a W-2 employee or independent contractor), as well as anyone who performed any function for FON and who was compensated for such services (regardless of the source of compensation).

22. All other terms used herein and not otherwise defined shall be accorded their ordinary meaning.

**Instructions:**

1. This subpoena calls for the production of all responsive documents in your possession, custody, or control without regard to the physical location of the documents, and without regard to whether they were prepared by or for you. All documents are to be in their original form, and are to include all marginalia and attached post-its, as well as any attachments referred to or incorporated by the document.

2. Unless otherwise specified, this request calls for the production of all documents dated, created, revised, in effect, or referred to from January 1, 2005, through the date of service of this subpoena, and shall include all documents that relate to such period even though prepared before that date.

3. To the extent that documents responsive to this subpoena once were, but no longer are, in the possession, custody, or control of FON, this request requires production of all existing indices, lists, or documents in FON's possession, custody, or control that reflect the transfer or destruction of, or references to, such documents.

4. To the extent that documents responsive to this request are in the possession, custody, or control of third parties, this subpoena requires a written statement to that effect at the time of production specifically providing the name, address, telephone number, and principal contact of the third party, and shall further identify those documents in said third party's possession.

5. All responsive ESI shall be produced consistent with the specifications described in the attached Specifications for Production of ESI and Digitized ("Scanned") Images.

6. All documents produced pursuant to this request are to be organized in such a manner that all documents relating to a particular request are grouped together and identified as being responsive to that request.

7. If no documents exist that are responsive to a request, a written statement to that effect shall be provided at the time of production.

8. For any document or part thereof which is not produced by reason of a claim of legal privilege or work product, FON shall provide: (1) the legal or other privilege being claimed and an explanation of the claim in sufficient detail to allow an assessment of its validity and (2) a description of each such document or part thereof, including, as applicable: type of document (e.g., letter, memorandum or handwritten notes); subject matter; title; date of preparation; number of pages; name, address and title of author(s); and names, addresses and titles of all actual and intended recipients.

**Requests:**

1.  Documents relating to the supervision of radiation oncology services, including:

    (a) Internal communications and correspondence, reports, and memoranda;
    (b) Communications and correspondence between any FON personnel, representative, or agent with any personnel, representative, or agent of Florida Hospital;
    (c) Documents reflecting meetings and teleconferences between FON and Florida Hospital, including minutes, notes, and material distributed at meetings;
    (d) Documents related to policies and procedures in effect at any time during the subpoena time period (and all versions thereof), including policies and procedures governing (i) scheduling radiation oncologists, other physicians, and non-physician practitioners, (ii) preparing and submitting claims to Medicare, Medicaid and Tricare, (iii) preparing the documentation and diagnoses required for these services, and (iv) meeting Medicare, Medicaid and Tricare regulations and rules governing the billing of radiation oncology services.

2.  For all claims submitted by FON to Medicare, Medicaid, and Tricare, documents sufficient to identify dates of service, times of service, procedure codes billed, health insurance numbers and names of patients, description of services or tests provided, diagnoses rendered, duration of all services provided, location where services were provided, and name(s) of the FON personnel who performed the services.

3.  Documents identifying FON personnel who provided, supervised, or performed any radiation oncology services, including a complete copy of personnel records.

4.  Time and attendance documents, including attendance and vacation logs or calendars, work schedules, and appointment detail reports, for current and former FON personnel who provided, supervised, or performed any radiation oncology services, including documents on the ARIA system and/or the I-Cloud/I-Cal cloud application and electronic mail discussing scheduling of coverage of any radiation oncology services.

5.  Documents relating to any Medicare Local Coverage Determination(s) governing the supervision of radiation oncology services, including Medicare Local Coverage Determination(s) permitting physicians who are not radiation oncologists to perform or supervise radiation oncology services.

6. Documents related to hospital privilege details granted by Florida Hospital to FON radiation oncologists, physicians, and non-physician practitioners.

7. Correspondence with Medicare, Medicaid, and Tricare, including their fiscal intermediaries, contractors, and agents, relating to the supervision of radiation oncology services.

8. Documents relating to any internal and/or external audits, investigations, pre- or post-payment reviews, evaluations, assessments, and/or inspections (including those by Medicare, Medicaid, Tricare, and private insurance carriers) of radiation oncology services, including FON's response(s), if any, thereto.

9. Documents relating to any complaints, objections, or concerns about the supervision of radiation oncology services performed by FON, including documents related to any investigation by or on behalf of FON and FON's response(s), if any, to such complaints/objections/concerns.

10. Agreements between FON and Florida Hospital.

11. Agreements between FON and Dr. Adnon Ahktar, Dr. David Robinson, and Dr. Ricardo Christosomo.

12. Electronic mail sent by, received by, or copied to Dr. Robert Sollaccio and Dr. Michael Montejo.

13. Documents relating to communications at FON partnership meetings at which the supervision of radiation oncology services was discussed, including the meeting minutes, notes thereof, and material distributed at meetings.

14. Communications to or from Dr. Robert Sollaccio, Dr. Adnon Ahktar, Dr. David Robinson, Dr. Ricardo Christosomo, Dr. Eric Saunders, Brenda Large, Larry Ponce, Dr. Kelly LaFave, Julie Arcaro, Dr. Robert Purdon, Dr. David Decker, Dr. Monica Reed, Dr. Michael Montejo, Dr. Raoul Chopra, Darlene Mowry, Veronica Decker, Dr. Olga Ivanov, Dr. Michael Pikowsky, Debi Luce, Dr. Mario Lacerna, Racquel Pitt, Jessica Boland, Leslie Aldrich, David Banks, Mark Martin, and Nancy Christiansen, related to the supervision of radiation oncology services.

15. Documents relating to the radiation oncology services provided to Ms. Carmen Cruz.

16. Documents to or from the American Society of Radiation Oncologists.

17. Documents evidencing or referring to FON's document retention policy and the implementation of that policy.

18. Organizational charts with names of individuals who have held each listed position.

19. Records that identify the names, Social Security numbers, last known addresses, and telephone numbers of all individuals paid by FON at any time during the subpoena time period (including W-2 employees, 1099 contractors, and consultants), along with job descriptions and dates of employment for each.

20. Documents reflecting relationship between FON and Florida Hospital Medical Group, including: (a) contracts or documents reflecting agreements, whether formal or informal; (b) communications between any individual employed in any capacity by or associated with FON and any individual employed in any capacity by or associated with Florida Hospital Medical Group.

21. Documents reflecting relationship between FON and Premier Oncology, including: (a) contracts or documents reflecting agreements, whether formal or informal; (b) communications between any individual employed in any capacity by or associated with FON and any individual employed in any capacity by or associated with Premier Oncology.

22. In-house educational and training materials, manuals, memoranda, and policies related to Medicare, Medicaid, and Tricare rules, requirements, and guidelines, including policy manuals, calendars, speaker and attendee lists, and material distributed at training.

23. Documents related to accreditation sought or received and peer reviews, including internal notes, communications and correspondence (both external and internal), and reports.

## ATTACHMENT B
### Specifications for Production of ESI and Digitized ("Scanned") Images
### ("Production Specifications")

**Collection of Electronically Stored Information** (ESI)
Careful consideration should be given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process.

1. **Specification Modifications**
   Any modifications or deviations from the Production Specifications may be done only with the express permission of the government. Any responsive data or documents that exist in locations or native forms not discussed in these Production Specifications remain responsive and, therefore, arrangements should be made with the government to facilitate their production.

2. **Production Format of ESI and Imaged Hard Copy**
   Responsive ESI and imaged hard copy shall be produced in the format outlined below. All ESI, except as outlined below in sections 9 – 19, shall be rendered to type TIFF image format, and accompanied by a Concordance® Image Cross Reference file. All applicable metadata (see section 3 below) shall be extracted and provided in Concordance® load file format.

   a. **Image File Format:** All images, paper documents scanned to images, or rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). Documents should be uniquely and sequentially Bates numbered with an endorsement burned into each image.
   - All TIFF file names shall include the unique Bates number burned into the image.
   - Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page.
   - All TIFF image files shall be stored with the ".tif" extension.
   - Images should be able to be OCR'd using standard COTS products, such as LexisNexis LAW PreDiscovery™.
   - All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, should be delivered on a single piece of media.
   - No image folder shall contain more than 2000 images.

   b. **Concordance® Image Cross Reference file:** Images should be accompanied by a Concordance® Image Cross Reference file that associates each Bates number with its corresponding single-page TIFF image file. The Cross Reference file should also contain the image file path for each Bates numbered page.
   - Image Cross Reference Sample Format:

     ABC00000001,OLS,D:\DatabaseName\Images\001\ ABC00000001.TIF,Y,,,
     ABC00000002,OLS,D:\DatabaseName\Images\001\ ABC00000002.TIF,,,,
     ABC00000003,OLS,D:\DatabaseName\Images\001\ ABC00000003.TIF,,,,
     ABC00000004,OLS,D:\DatabaseName\Images\001\ ABC00000004.TIF,Y,,,

   c. **Concordance® Load File**: Images should also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment. The file should contain the required fields listed below in section 3.

   - ASCII text delimited load files are defined using the following delimiters:

     | | |
     |---|---|
     | *Field Separator* | ^ or Code 094 |
     | *Text Qualifier* | \| or Code 124 |
     | *Substitute Carriage Return or New Line* | () or Code 013 |

**ATTACHMENT B**
**Specifications for Production of ESI and Digitized ("Scanned") Images**
**("Production Specifications")**

- The text file should also contain hyperlinks to applicable native files, such as Microsoft Excel or PowerPoint files.
- There should be one line for every record in a collection.
- The load file must contain a field map/key listing the metadata/database fields in the order they appear within the data file. For example, if the data file consists of a First Page of a Record (starting Bates), Last Page of a Record (ending Bates), Document ID, Document Date, File Name, and a Title, then the structure may appear as follows:

    |BEGDOC#|^|ENDDOC#|^|DOCID|^|DOCDATE|^|FILENAME|^|TITLE|

- The extracted/OCR text for each document should be provided as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.

3. **Required Metadata/Database Fields**

    - A "✓" denotes that the indicated field should be present in the load file produced.
    - "Other ESI" includes non-email or hard copy documents, including but not limited to data discussed in sections 6-9, and 12-19 below.

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-Mail | Other ESI |
|---|---|---|---|---|---|---|
| COMPANY | Company/Organization submitting data | Full Text | Unlimited | ✓ | ✓ | ✓ |
| BOX# | Submission/volume/box number | Note Text | 10 | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian(s)/Source(s) - format: Last, First or ABC Dept | Multi-Entry | Unlimited | ✓ | ✓ | ✓ |
| AUTHOR | Creator of the document | Note Text | 160 | | | ✓ |
| BEGDOC# | Start Bates (including prefix) - No spaces | Note Text | 60 | ✓ | ✓ | ✓ |
| ENDDOC# | End Bates (including prefix) - No spaces | Note Text | 60 | ✓ | ✓ | ✓ |
| DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Note Text | 60 | ✓ | ✓ | ✓ |
| PGCOUNT | Page Count | Integer | 10 | ✓ | ✓ | ✓ |
| PARENTID | Parent's DOCID or Parent's Start Bates (for EVERY document including all Child documents) | Note Text | 60 | ✓ | ✓ | ✓ |
| ATTACHIDs | Child document list; Child DOCID or Child Start Bates | Multi-Entry | 60 | ✓ | ✓ | ✓ |
| ATTACHLIST | List of Attachment Bates numbers | Multi Entry | Unlimited | | ✓ | ✓ |
| BEGATTACH | Start Bates number of first attachment | Note Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last | Note | 60 | ✓ | ✓ | ✓ |

## ATTACHMENT B
### Specifications for Production of ESI and Digitized ("Scanned") Images
### ("Production Specifications")

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-Mail | Other ESI |
|---|---|---|---|---|---|---|
| | attachment | Text | | | | |
| PROPERTIES | Privilege notations, Redacted, Document Withheld Based On Privilege | Multi-Entry | Unlimited | ✓ | ✓ | ✓ |
| RECORD TYPE | File, E-mail, Attachment, or Hard Copy | Note Text | 60 | ✓ | ✓ | ✓ |
| FROM | Author - format: Last name, First name | Note Text | 160 | | ✓ | ✓ |
| TO | Recipient- format: Last name, First name | Multi-Entry | Unlimited | | ✓ | ✓ |
| CC | Carbon Copy Recipients - format: Last name, First name | Multi-Entry | Unlimited | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients - format: Last name, First name | Multi-Entry | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject/Document Title | Note Text | Unlimited | | ✓ | ✓ |
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Note Text | Unlimited | | ✓ | |
| DOCDATE | Document Date/Date Sent - Format YYYY/MM/DD | Date Keyed | YYYY/MM/DD | | | ✓ |
| BODY | E-mail body, Other Electronic Document Extracted text, or OCR | Full Text | Unlimited | ✓ | ✓ | ✓ |
| TIMESENT | Time e-mail was sent | Time | 10 | | ✓ | |
| DATECRTD | Date Created | Date | YYYY/MM/DD | | ✓ | ✓ |
| DATESVD | Date Saved | Date | YYYY/MM/DD | | ✓ | ✓ |
| DATEMOD | Date Last Modified | Date Keyed | YYYY/MM/DD | | ✓ | ✓ |
| DATERCVD | Date Received | Date | YYYY/MM/DD | | ✓ | |
| DATEACCD | Date Accessed | Date | YYYY/MM/DD | | ✓ | ✓ |
| FILESIZE | File Size | Note Text | 10 | | | ✓ |
| FILENAME | File name - name of file as it appeared in its original location | Full Text | Unlimited | | | ✓ |
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Note Text | 160 | | ✓ | ✓ |
| FILE EXTENSION | Extension for the file (e.g. .doc; .pdf; .wpd) | Note Text | 10 | | ✓ | ✓ |
| FILEPATH | Data's original source full folder path | Full Text | Unlimited | | ✓ | ✓ |
| NATIVELINK | Current file path location to the native file | Full Text | Unlimited | | ✓ | ✓ |
| FOLDERID | E-mail folder path (e.g. Inbox\Active) or Hard Copy | Full Text | Unlimited | ✓ | ✓ | |

## ATTACHMENT B
## Specifications for Production of ESI and Digitized ("Scanned") Images
## ("Production Specifications")

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-Mail | Other ESI |
|---|---|---|---|---|---|---|
| | container information (e.g. Folder or binder name) | | | | | |
| PARAGRAPH | Subpoena/request paragraph number to which the document is responsive | Multi-Entry | Unlimited | ✓ | ✓ | ✓ |
| HASH | Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) | Note Text | Unlimited | | ✓ | ✓ |
| MESSAGEHEADER | Email header. Can contain IP address | Full Text | Unlimited | | ✓ | |
| ATTACHMCOUNT | Number of attachments to an email | Note Text | 10 | | ✓ | |
| FILETYPE | Identifies the application that created the file | Note Text | 160 | | ✓ | ✓ |
| COMMENTS | Identifies whether the document has comments associated with it | Note Text | 10 | | ✓ | ✓ |

4. **De-duplication, Near-Duplicate Identification, Email Conversation Threading and Other Culling Procedures**

   De-duplication of exact copies within a custodian's data may be done, but all "filepaths" must be provided for each duplicate document. The recipient shall not use any other procedure to cull, filter, group, separate or de-duplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the government. All objective coding (e.g., near dupe ID or e-mail thread ID) shall be discussed and produced to the government as additional metadata fields.

5. **Hidden Text**

   All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. For files that cannot be expanded the native files shall be produced with the image file.

6. **Embedded Files**

   All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

7. **Image-Only Files**

   All image-only files (non-searchable .pdfs, multi-page TIFFs, Snipping Tool [and other] screenshots, etc., as well as all other images that contain text) shall be produced with associated OCR text and metadata/database fields identified in section 3 for "Other ESI."

8. **Hard Copy Records**

   a. All hard copy material shall reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID). Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder.) The first document in the collection represents the parent document and all other documents will represent the children.

## ATTACHMENT B
## Specifications for Production of ESI and Digitized ("Scanned") Images
## ("Production Specifications")

   b. All documents shall be produced in black and white TIFF format unless the image requires color. An image "requires color" when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image. Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.
   c. All objective coding (e.g., document date or document author) should be discussed and produced to the government as additional metadata/database fields.

9.  **Production of Spreadsheets and Presentation Files.** All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format). *See* section 18 below. The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata. No alteration shall be made to file names or extensions for responsive native electronic files.

10. **Production of Email Repositories**
    Email repositories, also known as email databases (e.g., Outlook .PST, Lotus .NSF, etc.), can contain a variety of items, including: messages, calendars, contacts, tasks etc. For purposes of production, responsive items shall include the "Email" metadata/database fields outlined in section 3, including but not limited to all parent items (mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to email or other items) with the parent/child relationship preserved. Email databases from operating systems other than Microsoft Exchange shall be produced after consultation with and written consent of the government about the format for the production of such databases.

11. **Production of Items Originally Generated in E-Mail Repositories but Found and Collected Outside of Email Repositories, i.e., "Stand-alone" Items**
    Any parent email or other parent items (e.g., calendar, contacts, tasks, notes, etc.) found and collected outside of email repositories (e.g., items having extensions like .MSG, .HTM, .MHT, etc.), shall be produced items with the "Email" metadata fields outlined in section 3, including but not limited to any attachments, maintaining the family (parent/child) relationship.

12. **Production of Instant Messenger (IM), Voicemail Data, Audio Data, Video Data, etc.**
    The responding party shall identify, collect, and produce any and all data which is responsive to the requests which may be stored in audio or video recordings, cell phone/PDA/Blackberry/smart phone data, tablet data, voicemail messaging data, instant messaging, text messaging, conference call data, video/audio conferencing (e.g. GoTo Meeting, WebEx), and related/similar technologies. However, such data, logs, metadata or other files related thereto, as well as other less common but similar data types, shall be produced after consultation with and written consent of the government about the format for the production of such data.

13. **Social Media**
    Prior to any production of responsive data from Social Media (e.g., Twitter, Facebook, Google+, LinkedIn, etc.)the producing party shall first discuss with the government the potential export formats before collecting the information.

14. **Productions of Structured Data**
    Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, etc.), the producing party shall first provide the database dictionary and a list of all reports that can be generated from the structured database. The list of reports shall be provided in native Excel (.xls) format.

15. **Productions of Structured Data from Proprietary Applications**
    Prior to any production of structured data from proprietary applications (e.g., proprietary timekeeping, accounting, sales rep call notes, CRMs, SharePoint etc.) the producing party shall first provide the database

## ATTACHMENT B
## Specifications for Production of ESI and Digitized ("Scanned") Images
## ("Production Specifications")

dictionary and a list of all reports that can be generated from the structured database. The list of reports shall be produced in native Excel (.xls) format.

16. **Production of Photographs with Native File or Digitized ESI**
Photographs shall be produced as single-page .JPG files with a resolution equivalent to the original image as it was captured/created. All .JPG files shall have extracted metadata/database fields provided in a Concordance® load file format as outlined in section 3 for "Other ESI."

17. **Images from which Text Cannot be OCR Converted**
An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the electronic Bates, Document Id or Bates number(s) corresponding to each such image.

18. **Format of ESI from Non-PC or Windows-based Systems**
If responsive ESI is in non-PC or non-Windows-based Systems (e.g., Apple, IBM mainframes, and UNIX machines), the ESI shall be produced after discussion with and written consent of the government about the format for the production of such data.

19. **Production of Native Files (When Applicable Pursuant to These Specifications)**
Productions of native files, as called for in these specifications, shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 3.

    a. ESI shall be produced in a manner which is functionally useable by the government. The following are examples:
        - AutoCAD data, e.g., .DWG, .DXF, shall be processed/converted and produced as single-page .JPG image files and accompanied by a Concordance® Image formatted load as described above. The native files shall be placed in a separate folder on the production media and linked by a hyperlink within the text load file.
        - GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.
        - Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

20. **Bates Number Convention**
All images should be assigned Bates numbers before production to the government. The numbers should be "endorsed" (or "burned in") on the actual images. Native files should be assigned a single bates number for the entire file. The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion. The Bates number shall be a unique name/number common to each page (when assigned to an image) or to each document (when assigned to a native file). If the government agrees to a rolling production, the naming/numbering convention shall remain consistent throughout the entire production. There shall be no spaces between the prefix and numeric value. If suffixes are required, please use "dot notation." Below is a sample of dot notation:

    PREFIX0000001          PREFIX0000003
    PREFIX0000001.001      PREFIX0000003.001
    PREFIX0000001.002      PREFIX0000003.002

21. **Media Formats for Storage and Delivery of Production Data**

## ATTACHMENT B
## Specifications for Production of ESI and Digitized ("Scanned") Images
## ("Production Specifications")

Electronic documents and data shall be delivered on any of the following media:
   a. CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications.
   b. External hard drives [USB 2.0 (or better) or eSATA, formatted to NTFS format specifications] or flash drives.
   c. Storage media used to deliver ESI shall be appropriate to the size of the data in the production.
   d. Media should be labeled with the case name, production date, Bates range, and producing party.

22. **Virus Protection and Security for Delivery of Production Data**
Production data shall be free of computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the government. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions. No encryption software shall be used without the written consent of the government.

23. **Compliance and Adherence to Generally Accepted Technical Standards**
Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

24. **Read Me Text File**
All deliverables shall include a read me text file at the root directory containing: total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths and formats. The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

25. **Exception Log**
An Exception Log shall be included documenting any production anomalies utilizing the electronic Bates number (document id or control numbering) assigned during the collection, processing and production phases.

-XXX-