IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Petitioner,

v.

                        Misc. No.

FLORIDA ONCOLOGY NETWORK, P.A.,

    Respondent.
_____/

## DECLARATION OF JULIE GRAY IN SUPPORT OF PETITION FOR SUMMARY ENFORCEMENT OF ADMINISTRATIVE SUBPOENA

1. I have been a Special Agent of the United States Department of Health and Human Services, Office of Inspector General, Office of Investigations ("HHS-OIG") since September 2010. I have been assigned to HHS-OIG's investigation of Florida Oncology Network, P.A. since February 2013. In my capacity as a special agent, I investigate allegations of fraud and abuse in the programs and operations of HHS, including Medicare. The Inspector General Act of 1978 entrusts HHS-OIG with the responsibility of preventing and detecting fraud and abuse in the programs and operations of the Department of Health and Human Services, 5 U.S.C. App. 3 § 4(a)(3), including Medicare. In fulfilling that responsibility, HHS-OIG has the power to issue subpoenas requiring the production of documents. 5 U.S.C. App. 3 § 6(a)(4).

2. HHS-OIG's investigation of FON arises from the allegations in the *qui tam* action styled *United States ex rel. Montejo v. Adventist Health System Sunbelt Healthcare Corp.*, Case No. 8:13-cv-206-T-23AEP (M.D. Fla.), brought under the False Claims Act, 31 U.S.C. §§ 3729-33. I submit this declaration in support of the United States' Petition for Summary Enforcement

of a subpoena issued to FON in furtherance of HHS-OIG's investigation. I base this declaration based on personal knowledge obtained by me in the course of my official duties.

3. Florida Oncology Network, P.A. ("FON") is a Florida for-profit corporation with a principal address in Orlando. During the period relevant to the investigation, FON had a professional services agreement with Adventist Health System Sunbelt Healthcare Corp. to provide radiation oncology services at various Florida Hospital locations.

4. Medicare requires that radiation oncology services be directly supervised by a radiation oncologist or similarly qualified provider – that is, in the presence of a qualified physician who is immediately available to furnish assistance and direction throughout the performance of the procedure. *See* 42 C.F.R. § 410.27(a)(1)(iv), Medicare Benefit Policy Manual, ch. 6, § 20.5.2. HHS-OIG's ongoing investigation of FON involves whether FON administered radiation oncology services without appropriate supervision.

5. On April 16, 2013, HHS-OIG issued an administrative subpoena that requires FON to produce various documents listed in an attachment to the subpoena, including documents relating to: (1) the supervision of radiation oncology services and (2) any internal and/or external audits, investigations, evaluations, and assessments related to FON's radiation oncology services. Before the subpoena was issued, an attorney with the Office of Counsel to the Inspector General, U.S. Department of Health and Human Services, reviewed the subpoena for, among other things, compliance with the Inspector General Act of 1978, to ensure that the subpoena came within HHS-OIG's statutory subpoena authority. I served the subpoena personally on a FON representative at its principal Orlando address on April 18, 2013. A true and correct copy of the subpoena and return of service are attached as Exhibit 1 to the Petition for Enforcement.

6. From documents produced by FON, I learned that FON had retained Revenue Cycle, Inc. to address the Medicare requirements governing supervision of radiation oncology services. Based on those documents, I believe that FON's retention of Revenue Cycle pre-dated and is unconnected with the pending *qui tam* action. On October 31, 2014, I served Revenue Cycle with a subpoena for documents related to its work for FON. A true and correct copy of the Revenue Cycle subpoena and return of service are attached as Exhibit 2 to the Petition for Enforcement. Revenue Cycle withheld the production of certain documents based on the attorney-client and work product privileges asserted by FON. *See* Exhibit 3 to Petition for Enforcement (Jan. 27, 2015 Stovash, Case & Tingley email). From the privilege log created by FON, I believed that the withheld documents came within the scope of the subpoena served on FON. At the time FON produced the privilege log in relation to the Revenue Cycle subpoena, FON had neither produced the withheld documents nor produced a privilege log in relation to the subpoena served on FON.

7. FON later asserted the attorney-client and work product privileges and withheld the same documents in relation to the subpoena I served on FON. *See* Exhibit 8 to Petition for Enforcement (March 5, 2015 letter from Stovash, Case & Tingley). Based on my review of FON's privilege log, my review of documents produced by FON that reflect FON's relationship with Revenue Cycle, and conversations with Revenue Cycle's chief executive officer, I believe that the thirty-nine documents that are the subject of the enforcement petition, *see* Exhibit 11 to Petition for Enforcement,[1] are relevant to my investigation of FON and, in particular, to the issue of FON's knowledge of Medicare's supervision requirements for radiation oncology services.

---

[1] Based on information obtained from Revenue Cycle's chief executive officer, I understand that the individuals whose names are in red were Revenue Cycle employees at the time of the relevant email. Based on my investigation, including review of documents obtained from FON, I understand that the individuals whose names are in blue were FON employees.

3

Based on my investigation and conversations with Revenue Cycle's chief executive officer, I believe that Revenue Cycle advised FON, among other things, that Medicare required that one of its radiation oncologists be physically present whenever FON administered radiation therapy to its cancer patients and that certain FON physicians disagreed with this guidance. I further believe, based on conversations with Revenue Cycle's chief executive officer, that FON considered retaining Revenue Cycle for a broad range of administrative tasks and billing services, in addition to providing guidance regarding Medicare regulations.

8. Based on my investigation to date, Revenue Cycle's role appears to have been unique. I am unaware of another third party who audited FON to the same degree and provided the same level of guidance.

9. I have spoken with Revenue Cycle's chief executive officer, who advised me that he is unaware that Revenue Cycle's work was related to any lawsuit and that neither he nor his employees recall Michael Pirkowski.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of April, 2015.

*Julie Gray*
Special Agent, Office of the Inspector General
U.S. Department of Health and Human Services